STUART PERKAL AND PAMELA PERKAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perkal v. Commissioner
Docket No. 5848-78.
United States Tax Court
T.C. Memo 1985-272; 1985 Tax Ct. Memo LEXIS 357; 50 T.C.M. (CCH) 71; T.C.M. (RIA) 85272; June 6, 1985. *357 United was incorporated in September 1973; thereafter it issued 100 shares of its authorized 5,000 shares to Katz. On March 25, 1974, United adopted a plan to issue section 1244 stock. Thereafter, petitioner-husband loaned $40,000 to United. On July 15, 1974, petitioner-husband agreed to relinguish United's debt to him in exchange for 29 shares of section 1244 stock. United paid $1,000 to petitioner-husband thereby reducing his investment to $39,000. By the end of 1974, petitioner-husband's United stock became worthless. Held: Petitioner have failed to prove that there was no unissued stock of a prior offering when the plan to issue section 1244 stock was adopted; consequently, petitioners have failed to prove that their United stock constituted section 1244 stock. Section 1244(c)(1)(C), I.R.C. 1954, and section 1.1244(c)-1(e), Income Tax Regs., as in effect for 1974. *358 Gerald H. Lean, for the petitioners. Susan B. Watson, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1974 in the amount of $13,049. The issue for decision is whether stock issued by United Lite Company, Inc., to petitioner-husband qualifies as section 1244[1] stock, thereby entitling petitioners to ordinary loss treatment (rather than short-term capital loss treatment) when the stock became worthless in 1974. *359 FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Stuart Perkal (hereinafter sometimes referred to as "Perkal") and Pamela Perkal, husband and wife, resided in Baltimore, Maryland. On September 5, 1973, United *360 Lite Company, Inc. (hereinafter sometimes referred to as "United"), was incorporated in Maryland, with authorized capital of 5,000 shares of no-par common stock. The directors of United were Joel Katz (hereinafter sometimes referred to as "Katz"), Lois Katz, and Michael Magin. At the time of United's incorporation, an offering of stock was made and Katz was issued 100 shares in United, for which he paid $5,000. United was formed to sell light bulbs to the general public. In early 1974, United needed additional funds. On March 25, 1974, United adopted a resolution (hereinafter sometimes referred to as "the Plan"), authorizing the issuance of section 1244 stock. [2] Under the Plan, 100 shares of no-par common stock could be issued during the period of March 26, 1974, through March 26, 1976, for a maximum consideration of $80,000. Katz approached Perkal, a long-time friend and asked him to lend money to United. Between April 15 and July 15, 1974, Perkal lent $40,000 to United, in three separate checks of $25,000 (check dated April 15, 1974), $5,000 (check dated July 8, 1974), and $10,000 (check dated *361 July 15, 1974).During 1974, Perkal received $1,000 back from United. In addition, Perkal received a $4,000 check from United which was never paid because of insufficient funds. On July 15, 1974, Perkal agreed to relinquish United's debt to him in exchange for 29 shares of United's stock and, on the same day, a certificate (certificate number 4) for 29 shares of United's stock was issued to Perkal. By a letter dated December 2, 1974, Katz informed Perkal that United had ceased operations on October 1, 1974. In his attempt to keep United solvent, Katz arranged for United to receive some unauthorized loans from a bank. Because of this conduct, on June 14, 1974, the United States District Court for the District of Maryland convicted Katz, based on his guilty plea, of one count of mail fraud. He was sentenced to five years imprisonment; however, the court suspended his sentence and instead placed Katz on probation for five years. On their 1974 joint Federal income tax return, petitioners claimed an ordinary loss deduction of $39,000 from the worthlessness of United's stock. Petitioners reported this loss on Form 4797--Supplemental Schedule of Gains and Losses, Part II, *362 Ordinary Gains and Losses. In describing the kind of property in its designated place on the form, petitioners put "UNITED LITE CO - SEC 1244 STOCK" and as to the Gain or (loss), they put "39,000". No other information was provided. Respondent disallowed this deduction and instead determined that petitioners sustained a $39,000 short-term capital loss. Perkal sustained a $39,000 loss in 1974 on account of the worthlessness of his stock in United. OPINION Petitioners assert that Perkal acquired section 1244 stock in United, the stock became worthless in 1974, and his loss from the worthlessness was $39,000. They contend that, on account of the foregoing, they are entitled to an ordinary loss deduction of $39,000 for 1974. Respondent maintains that Perkal's stock investment was actually a loan to United and that the issuance of section 1244 stock was void under Maryland State law. Also, respondent asserts that there was a failure to comply with the requirements of certain regulations under section 1244[3] and, therefore, petitioners are not entitled to an ordinary loss deduction. [4]
*363 We agree with respondent that petitioners are not entitled to an ordinary loss deduction. Ordinarily, when stock in a corporation becomes worthless, the shareholder's loss is treated as a capital loss the deductibility of which is limited by section 1211. Under section 1211(b), petitioners could deduct only $1,000 in losses for 1974. However, section 1244[5] provides that a loss on section 1244 stock is to be treated to a limited extent as an ordinary loss. *364 Petitioners bear both the burden of persuasion (the ultimate burden) and the burden of going forward with the evidence in this case. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice & Procedure.Section 1244(c) defines section 1244 stock. In relevant portion, section 1244(c)(1) provides that common stock in a domestic corporation will be section 1244 stock if each of a series of requirements is met, one of which (subparagraph (C)) is that "at the time such plan [to issue section 1244 stock] was adopted, no portion of a prior offering was outstanding." Section 1244(e)[6] was enacted to provide the Secretary with the authority to issue "legislative regulations" to further the purposes of this section. Under 1.1244(c)-1(e) [7], Income Tax Regs., an offer remains outstanding unless and until it is withdrawn by affirmative action before the plan is adopted. *365 In order to establish United's compliance with section 1244(c)(1)(C) and section 1.1244(c)-1(e), Income Tax Regs., petitioners rely entirely on the testimony of Katz. [8]
From Katz's testimony it is unclear whether (1) the initial offering had been withdrawn after he received the 100 shares or (2) that the issuance to him of 100 shares of United's stock constituted the entire initial offering. On answering brief, it is petitioners' position "that the initial offering of common stock was not outstanding at the time of the adoption of the plan based on Joel Katz's testimony (T. 10) that it was affirmatively withdrawn." Even if we agree with petitioners' interpretation of Katz's testimony, we still do not have any explanation as to the specific details of the initial offering -- the offering date, the total number *366 of shares offered, and how and when the initial offering was "affirmatively withdrawn". Neither of the other two directors of United testified. The regulations requires an "affirmative withdrawal" and we have no evidence, other than Katz's testimony (n.8, supra), of any such conduct. In ascertaining Katz's credibility, we note that Katz was convicted of mail fraud in his attempt to keep United solvent. Crimes involving deliberate and carefully premeditated intent such as fraud and forgery are probative on the issue of propensity to lie under oath. Since mail fraud is within this category of offenses, the probative value of this attack on Katz's credibility is enhanced. See United States v. Cohen,544 F.2d 781, 785 (CA5 1977). Correspondingly, the probative value of Katz's testimony is reduced. After a careful review of the record, we are of the opinion that Katz's testimony lacks credibility, reliability, and trustworthiness. Katz asserted the unavailability of United's corporate records to corroborate his testimony regarding United's compliance with section 1.1244(c)-1(e), Income Tax Regs. *367 , and United's compliance with the corporate recordkeeping requirements of subparagraphs (1), (3), and (5) of section 1.1244(e)-1(a), Income Tax Regs. He attributed this situation to the government's dilatory conduct in returning the records they had subpoenaed for a criminal investigation of his business activities with United. This explanation is not persuasive. Katz testified at trial that he pleaded guilty to one count of mail fraud as a consequence of engaging in some unauthorized bank transactions to assist United's poor financial position. However, the United States District Court for the District of Maryland convicted Katz on June 14, 1974. Perkal's stock was issued on July 15, 1974, about one month after Katz's conviction. Nothing in the record of the instant case persuades us that United's records regarding a July 15, 1974, event would have been subpoenaed on account of a criminal proceeding ending in a conviction on June 14, 1974. In short, we believe that Katz lied as to the reason for United's records being unavailable. The parties stipulated to the corporate minutes of a March 25, 1974, stockholders' meeting, wherein United *368 adopted the plan to issue section 1244 stock. Included in the one-page report is the conclusory statement that "THER [sic] IS NOT UNISSUED ANY PORTION OF A PRIOR OFFERING OF ANY OF THIS CORP [sic] CORPORATIONS [sic] STOCK * * *". Neither at trial nor on brief, do petitioners rely on this statement to support their position. We, too, believe this blanket statement by itself is insufficient to establish compliance with section 1244(c)(1)(C) and with section 1.1244(c)-1(e), Income Tax Regs. Thus, althogh petitioners have come forward with some evidence, they have failed to sustain their burden of persuasion. Perkal's stock certificate is number 4. Presumably, Katz received certificate number 1. Petitioners do not explain what happened to certificates number 2 and number 3. Thus, petitioners leave us with another loose end which, had it been tied down, might have helped to explain the stock situation. We conclude that petitioners have failed to carry their burden of proving that there was compliance with the requirements of section 1244(c)(1)(C) and of section 1.1244(c)-1(e), Income Tax Regs.
We hold *369 for respondent. [9]
In order to reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. The term "section 1244 stock" is defined in section 1244(c)↩.
3. Respondent focuses on sections 1.1244(c)-1(e), 1.1244(e)-1(a) (subparagraphs (1), (3), (5)), and 1.1244(e)-1(b), Income Tax Regs.↩
4. In addition, on answering brief, respondent asserts that "there is no concrete evidence in the record to show that the loan became worthless in 1974." Respondent thereby ignores the following colloquy at the start of the trial in the instant case: THE COURT: * * * Then there is no question in this case but that the investment, in whatever form it was, loan or stock, did indeed become worthless during the year? MS. WATSON: Yes, Your Honor. The only question is whether it qualifies. THE COURT: The respondent is not disputing the fact of worthlessness. The respondent is not disputing the time of worthlessness, that is, that it was during 1974. MS. WATSON: No, Your Honor. Right. THE COURT: The respondent is not disputing the amount of worthlessness, that is, the $39,000 that was claimed? MS. WATSON: Correct, Your Honor. THE COURT: Very well. In light of the foregoing, together with respondent's determination in the notice of deficiency that petitioners are entitled to deduct Perkal's $39,000 investment in United as a short-term capital loss (see sec. 166(d)) sustained in 1974, we have found that Perkal sustained a $39,000 loss in 1974 on account of the worthlessness of his stock in United.↩
5. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule.--In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. (b) Maximum Amount For Any Taxable Year.--For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed-- (1) $25,000, or (2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013. (c) Section 1244 Stock Defined.-- (1) In General.--For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if-- (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and * * * Such term does not include stock if issued (pursuant to the plan referred to in subparagraph (A)) after a subsequent offering of stock has been made by the corporation. * * * (e) Regulations.--The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section. [The subsequent amendments of this provision (by secs. 1901(b)(3)(G), and 1906(b)(13)[sic](A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1793, 1834, and by sec. 345 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2844) do not affect the instant case.]↩
6. As we noted in Davenport v. Commissioner,70 T.C. 922, 927↩ (1978), subsection (e) "contains an extraordinary provision specifically delegating to the Secretary the authority to 'prescribe such regulations as may be necessary to carry out the purposes of this section.'" 7. As a result of T.D. 7779, the text of this provision, with some modifications, now appears as section 1.1244(c)-1(f)(2), Income Tax Regs. Although the new language applies to stock issued on or before November 6, 1978, it does not apply to taxable years ending before 1978. T.D. 7779, 1981-1 C.B. 440, 443. This requirement is based on section 1244(c)(1)(C)↩ which was repealed by section 345(c) of the Revenue Act of 1978. The repeal, however, applies only to stock issued after November 6, 1978.
8. The total testimony relied on is as follows: Q. Now, after this initial offering of stock, was any other stock offered -- A. No. Q. -- at that time, or -- A. No, there was no offering of any stock. Q. So in your opinion, the initial offering was withdrawn after you purchased the initial shares. A. Yes, it was.↩
9. Under the circumstances, we do not determine whether there has been "substantial compliance" with the recordkeeping requirements of subparagraphs (1), (3), and (5) of section 1.1244(e)-1(a), Income Tax Regs., or the filing and recordkeeping requirements of section 1.1244(e)-1(b), Income Tax Regs. Also, we do not determine whether substantial compliance would have been sufficient. Cf. Tipps v. Commissioner,74 T.C. 458↩ (1980). Finally, we do not determine the effect of Maryland State law on this matter.